RITCH v. HAIRSTON AND YORK v. HAIRSTON.

---

J. G. RITCH, PLAINTIFF v. CLYDE JUNIOR HAIRSTON AND DOAK HUD-
SON, DEFENDANTS, AND FRANK P. HOLTON, JR., ADMINISTRATOR OF THE
ESTATE OF DOAK HUDSON ADDITIONAL DEFENDANT.

AND

MRS. BERTIE D. YORK, PLAINTIFF v. CLYDE JUNIOR HAIRSTON AND
FRANK P. HOLTON, JR., ADMINISTRATOR OF THE ESTATE OF DOAK
HUDSON, DEFENDANTS.

(Filed 14 June 1963.)

Automobiles §§ 41a, 41f, 43;    Negligence § 8— In order for second
defendant to be held liable in three-car collision it must be shown
that the second impact caused or contributed to the injuries or
damages.

Evidence that the first defendant hit the vehicle in which plaintiffs
were riding on its left after it had been pulled to its right into the ditch
on its right side of the highway, and that immediately thereafter the
car of the second defendant, which had been following the car of the first
defendant, crashed into the car of the first defendant and knocked it
against plaintiffs' car and caused the first defendant to be thrown through
the window of his car against plaintiffs' car, breaking the glass, which
cut one of plaintiffs, with further evidence that the second defendant was
following the first defendant at excessive speed on a dusty winding road,
*is held* sufficient to be submitted to the jury in the action by the plaintiff
cut by glass to recover for personal injuries, but there being no evidence
that the second impact contributed to the personal injuries of the other
plaintiff or to the damages to his car, nonsuit in the action by the other
plaintiff is proper.

APPEAL by plaintiffs from *Riddle, S.J.,* October 15, 1962 Civil Term
of GUILFORD (High Point Division).

These two actions for damages growing out of two collisions involv-
ing three automobiles were consolidated for trial. Plaintiff Ritch and
his passenger, the plaintiff York, each sued the drivers of the other
two cars alleging joint and concurring negligence. The defendant
Hairston filed no answer and judgments by default and inquiry were
taken against him. After summonses were served upon defendant Doak
Hudson, he died from causes unrelated to the accident and his ad-
ministrator was made a party. At the close of plaintiffs' evidence the
court allowed the motion of the defendant administrator for judgment
of involuntary nonsuit. The jury assessed damages against Hairston
in both cases. On appeal, each plaintiff questions only the correctness
of the judgment nonsuiting his case against the estate of Hudson.

The following is a resume of plaintiffs' evidence:

On July 28, 1959 about 12:30 p.m. plaintiff Ritch was operating his
1957 Cadillac in a westerly direction on the right side of an unpaved
road, twenty-two feet wide from ditch to ditch, in Randolph County.

On the front seat with him were the plaintiff York and her son. The sun was shining; the road was dry and very dusty. The defendant Hairston was operating his 1950 Oldsmobile in an easterly direction. He was followed by the defendant Hudson in his 1951 Oldsmobile. The two defendants had been together all the morning drinking white whiskey and, at the time of the collision, were enroute from a store where they had eaten to Hudson's home. Ritch testified that when he was from one hundred to one hundred and fifty feet east of the crest of the hill he first saw the Hairston car when it came over in a cloud of dust. Hairston was in the middle of the road, traveling at fifty to sixty miles an hour. Ritch pulled over as far as he could into the ditch with the right side of his car against the bank. His version of the impact was: "(A)nd when their car hit, their car hit my left fender — left fender on my side, and it was just a little past the right fender of his car where it hit. Well, when it hit that, of course, that throwed this other car around and immediately when it hit that and hit my headlight. . . I heard another bang. . . The first car collided with my left front. The first car swung around in the road so that it was headed back almost in the same direction I was going." The first impact threw plaintiffs against the front of the car and neither saw the Hudson car until after the collision.

The Hairston car had no damage on the rear end — only on the side. However, Ritch thought there was damage on the left side as well as on the right. He described the first impact as "a pretty terrific crash." A few seconds elapsed between it and the second impact. The Hudson car never hit the Ritch car but when Hudson collided with Hairston's automobile it was knocked against the Ritch car again. The Ritch car was damaged on the left front and the left rear fender. After the second collision a man came through the window of the Hairston car and hit the glass on the left of the Ritch car. Ritch testified, "(T)hat's where I got cut across that side. I was this way and that way. There were two impacts."

Plaintiff York testified that in the first collision she was thrown against the heater and that was where she got the injuries to her legs. The windshield cut her arm and face. The medical testimony was, by stipulation, omitted from the record.

A passenger in the Hairston automobile testified that the collision between the Hairston and Ritch cars was almost head-on; that immediately prior to the impact Hairston was going up the hill and Ritch had just topped it and was coming down, meeting Hairston on the west side. He said that after the collision the Hairston car was "angled" and, a few seconds later, the Hudson vehicle struck the Hairston car — the right side of it, he thought.

The highway patrolman who investigated the accident testified that he found the Cadillac on the north side of the road headed west with the right front in the right ditch; the Hairston car was about in the middle of the road headed back almost the way it had come. Twenty-nine feet of tire marks led from about the center of the road to the Cadillac. Tire marks fifty-seven feet long led to the Hairston automobile. West of the Hudson car were one hundred and sixteen feet of tire marks "more or less on the right side of the road." According to the patrolman the point of impact was seventeen feet west of the knoll and visibility from that point west was unobstructed for two hundred feet.

The road west of the point of impact was unpaved, narrow, hilly, and curvy. Plaintiffs alleged, *inter alia*, that Hudson was following the Hairston automobile too closely; that he was operating his vehicle while under the influence of alcoholic beverages; that he failed to keep a proper lookout and that he was traveling at an excessive speed under the circumstances.

*Morgan, Byerly, Post, Van Anda & Keziah for plaintiff appellants.*
*Smith, Moore, Smith, Schell & Hunter for Frank P. Holton, Jr., Admr. of the Estate of Doak Hudson, Deceased, Defendant Appellee.*

SHARP, J. In order to make out a case against Hudson's estate, plaintiffs must offer evidence tending to show (1) that the second collision was proximately caused by the negligence of Hudson; and (2) that the second collision proximately caused or contributed to the injuries upon which plaintiffs' action is based. *Riddle v. Artis,* 246 N.C. 629, 99 S.E. 2d 857.

The ruling on the motion for nonsuit does not depend upon the plaintiffs' testimony even though it be in conflict with other plaintiffs' witnesses. *Russell v. Hamlett,* 259 N.C. 273, 130 S.E. 2d 395; *Wiggins v. Ponder,* 259 N.C. 277, 130 S.E. 2d 402. Both the investigating officer and a passenger in the Hairston car fixed the collision on the west side of the knoll at a point where visibility from the west, the direction from which the Hudson automobile came, was unobstructed for two hundred feet. Hudson was traveling behind Hairston in "a lot of dust" on a treacherous road. After making one hundred and sixteen feet of tire or skid marks he collided with the Hairston car with such force that it was knocked into the Ritch automobile causing Hairston to be thrown from the window of his vehicle against the Ritch car. Hairston's impact with it broke the window. From this evidence the jury could find that Hudson was operating his vehicle

.at an excessive rate of speed considering the dust and other highway .conditions, following the Hairston car too closely, and that he was not keeping a proper lookout.

Thus, there was ample evidence that Hudson was guilty of negligence on the occasion in question. Was there also evidence that his negligence proximately contributed to plaintiffs' injuries? In the absence of any evidence, the jury may not be permitted to speculate whether any part of a plaintiff's injury resulted from the second tortfeasor's negligence.

As to the plaintiff York, we think the evidence is insufficient to show that the second collision caused or contributed to her injuries. As to the plaintiff Ritch, however, there is evidence that the second collision contributed to his personal injuries and from which it may be reasonably inferred, to his property damage.

As to plaintiff York —
Affirmed.
As to plaintiff Ritch —
Reversed.